WALTER W. HOLMES et al., Appellants, v. WEBB CITY BUILDING AND LOAN ASSOCIATION, a Corporation, et al., Respondents.

Springfield Court of Appeals, March 12, 1915.

1. **LOANS: Building and Loan Associations: Borrower Estopped from Setting up Usury, When.** Plaintiff was a member of defendant building and loan association and as such member borrowed money from said company. He fell behind with his payments on the loan and cashed in his pledged shares at their value at that time. He could not thereafter claim that the loan was usurious since if his contract was usurious so were all the others from which he received profits and he could not be permitted to hold the benefits and have the court relieve him of the burden of the contract.

2. **INJUNCTIONS:** Restraining Collection Because of Usury: Prerequisite Conditions. In order to maintain an injunction to restrain the enforcement of steps taken to collect money on the ground that the amount demanded is excessive or that part of same is illegal plaintiff must first tender what is justly due.

3. ———: ———: Tender Not Made: Relief Denied. Plaintiff, a borrowing member of defendant building and loan association, brought action to restrain the foreclosure of a deed of trust given as security for the loan on the ground of usury. He did not tender an amount sufficient to cover the balance, legal interest, dues, fines, etc. The injunctive relief sought was properly refused.

4. **APPEAL AND ERROR:** Motion for New Trial: Grounds: Objections in Lower Court. The action of the trial court in failing to take an accounting upon refusal of an injunction, *held* not open to review under grounds stated in motion for a new trial.

5. ———: What Reviewed: Method of Trial. Plaintiff should present his entire case to the trial court unless prevented by some adverse ruling. He cannot present evidence sufficient to raise one question, suffer adverse judgment and on appeal ask the appellate court, while sustaining the correctness of the trial court's ruling on the question presented, to reverse and remand the cause for further trial.

6. ———: Injunction: Accounting. The court on appeal in an action for injunction will not remand the case for a new trial on the issue of accounting, where sufficient evidence to warrant an accounting was not introduced and the injunction was properly dismissed.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*Frank L. Farlow* for appellants.

(1) Under the laws of this State, this suit was a proper proceeding to determine the rights of the parties in the premises, and the petition of plaintiffs was so drawn, that it was the duty of the court to have found and determined whether the plaintiffs had fully paid the defendants all moneys due it, and if so to

have entered a judgment in favor of plaintiffs order-
ing the cancellation of the deed of trust; and if the
court found that any amount was due the defendants,
then it was the duty of the court to have fixed the
amount and the cancellation conditionally on plaintiffs
paying that amount. Holmes v. Royal Loan Associa-
tion, 166 Mo. App. 719; Arbuthnot v. Loan and Building
Association, 98 Mo. App. 382; Barnes v. Sav. & Bldg.
Assn., 83 Mo. App. 466; Moore v. B. and L. .Assn., 74
Mo. App. 468; Price v. Empire Loan Assn., 75 Mo.
App. 551; Brown v Archer, 62 Mo. App. 277; McDon-
nell v. De Sota B. and L., 175 Mo. 250; Lewis v.
Farmers Loan and Building Association, 183 Mo. 351.
The interest and premium paid on the loan made the
loan usurious and the plaintiffs became entitled to
credit for the premium paid during all the time as
shown by the pass books. Holmes v. Loan Association,
166 Mo. App. 719.

*A. G. Young* for respondents.

(1) Plaintiffs were not entitled to an accounting.
The authorities cited in appellant's brief are not in
point. In some of those cases the court found that the
loan association had charged usurious interest because
the premium was not fixed by competitive bidding as
the by-laws required, and deducted the excessive
charge from the amount demanded. In the case at bar,
the court dismissed plaintiff's bill, which was equiva-
lent to saying that the amount demanded before the
property was advertised for sale, $241.36, was correct.
Plaintiffs then had the alternative of paying this
amount, with accumulated interest, or let the property
go to sale. (2) The laws of Missouri gave the as-
sociation the right to collect premiums and fines, pro-
vided they are not unreasonable or extortionate. R. S.
1909, secs. 3390 and 3391. (3) Since 1895, building

189MA7

and loan associations have had the right to dispense with bidding and loan at such rate of interest and premium as may be provided by the by-laws, the premium to be paid in gross installments. R. S. 1909, sec. 3389. (4) If the premium is exacted in the manner authorized by statute, it is not usurious regardless of the amount. Sappington v. Loan Company, 76 Mo. App. 242; Spithover v. Building & Loan Assn., 225 Mo. 660; Cramer v. Southern Ohio Loan Company, 2 Am. & Eng. An. cases, 990. (5) Defendants having cashed out on April 6, 1911, and received the dividends on other loans, cannot now plead usury, even if the loan was usurious. State ex rel. v. Stocton, 85 Mo. App. 477; Cover v. B. & L. Assn., 93 Mo. App. 302.

STURGIS, J.—The plaintiff is a borrower from the defendant building and loan association and seeks to enjoin a sale of his property covered by a deed of trust given to secure payment of the same. A loan was first made, August 24, 1909, for $750. The plaintiff at the same time took out and pledged to the defendant thirty-eight shares of its installment stock of the value of $100 each when fully paid up. By his note or bond, secured by the deed of trust, plaintiff contracted to pay "first, the sum of nineteen dollars as monthly dues on said thirty-eight pledged shares, second, the further sum of six and 25-100. . . . dollars as monthly interest and premium on said loan; and shall pay all fines, penalties and charges assessed against said share, either until the dues and dividends credited by said Association to each of said pledged shares, in accordance with its by-laws, shall amount to the sum of one hundred dollars, whereupon the sum so loaned shall be repaid by the absolute surrender to, and cancellation by, said Association of said pledged shares, or until said obligor shall repay the sum loaned in accordance with the by-laws of the Association." The monthly dues on the stock, fifty

cents per share monthly, is the amount required of all stockholders, whether borrowers or not. The amount of the monthly interest and premium was fixed and determined by the defendant's by-laws, which provided that in making loans to its stockholders "the borrower shall pay interest at the rate of eight per cent per annum, and a premium of two per cent per annum, interest and premium payable in equal monthly installments." Defendant also has a by-law levying a fine of five cents per share for failure to pay the stock dues on or before the fifth day of each month. The provisions of plaintiff's note and deed of trust in effect required a monthly payment of one-twelfth of ten per cent of the amount of the loan.

The ground of plaintiff's complaint is that the premium thus provided for by the by-laws and agreed to be paid by plaintiff is not fixed in the manner provided by section 3389, Revised Statutes 1909, and is, therefore, not protected by section 3391, Revised Statutes 1909, from being usurious. This contention is based on the ruling of the Kansas City Court of Appeals in Holmes v. Loan Ass'n, 166 Mo. App. 719, 150 S. W. 1111.

Plaintiff further states in his petition that he has repaid to the said defendant association the said sum of seven hundred and fifty dollars, received by them, together with interest thereon at the rate of *eight* per cent per annum, being the amount that the plaintiff claims by reason of the premises would be due the said defendant association, except the sum of one hundred and forty dollars, which amount the plaintiff on the —— day of February, 1914, duly tendered in lawful money to defendant association and demanded a return to plaintiff of the said obligation and deed of trust; that the defendant refused to receive said sum of money, or to cancel said obligation and surrender said deed of trust, but, arbitrarily and without authority in law, demanded that the plaintiff pay to

the said defendant the further sum of two hundred and forty-five dollars, being the sum of one hundred and five dollars in excess of any and all amounts due to the defendant. The plaintiff then alleges that defendant is about to, and unless restrained will, sell his property under the power of sale in the deed of trust. The prayer for relief is as follows: "Therefore, by reason of the premises plaintiff prays this court that a writ of injunction issue from this court enjoining and restraining the defendant association from further proceeding to sell said real estate of plaintiff under said notice of sale as aforesaid, and from selling or offering for sale said real estate or any part thereof, at any sale under said deed of trust, and from interfering in any manner with the possession or title to said real estate, and from assessing further fines or penalties against the plaintiff during the pendency of this suit and on final hearing that said injunction be made permanent, and for such other and further relief as to the court shall seem mete and just; and that the court take an accounting between the plaintiff and defendant in reference hereto, and of the amount, if any, the court may find due the defendant upon payment by plaintiff of the amount found due by the court to defendant, or paid into court for its use and benefit, that said deed of trust may be ordered by the court to be canceled of record, and satisfied and the cloud thereby cast upon plaintiff's title removed, and that plaintiff may recover his costs in the premises and for all other proper relief."

The defendant's answer admits making the loan and the execution of the papers evidencing and securing the same; asserts that the interest and premium were fixed according to its by-laws and denies that same is usurious; admits the tender of one hundred and forty dollars and its refusal to accept same in full payment of the loan, and denies that the amount

tendered is all that is due thereon. On these issues the case went to trial and the court found for defendant, dismissing plaintiff's bill.

I. The only evidence in the case as to what plaintiff had paid on the loan was given by the defendant's secretary, called as a witness for plaintiff, so that the facts are not disputed. Without going into details, it is sufficient to say that the plaintiff paid his dues, interest and premium, amounting to $26.25 per month, irregularly, so that on April 1, 1911, he was in arrears some five or six monthly payments and owed $9.50 for fines. At that time a settlement was made between plaintiff and defendant, by which plaintiff cashed in his shares of stock at their then value, received credit for all delinquencies and $100 on the principal of his loan, and defendant paid him a cash balance of $122.50. The plaintiff then took out forty new shares of stock, making his monthly dues thereon $20, and in effect made a new loan for $650, on which he was charged and paid $5.42 each month for interest and premium. His monthly payments thereafter amounted to $25.42. It will be seen that the interest and premium were fixed in accordance with defendant's by-laws as above set out. On this loan the plaintiff's payments were still more irregular, the last payment being in November, 1913. Though plaintiff was then eight or nine months in arrears and fines amounting to $35 had been assessed against him. This suit was filed February 25, 1914.

It is evident that the question of usurious interest so far as it might affect the first loan is out of the case. When plaintiff and defendant made the voluntary settlement in April, 1911, the plaintiff cashed in and accepted the profits on his thirty-eight shares of stock which profits arose from his and like contracts with other borrowing shareholders. If his contract was usurious, so were all the others and the profits re-

ceived by him grew out of these usurious contracts. He cannot be permitted to 'hold the benefits of this contract and have the court relieve him of its burdens. [State ex rel. v. Stockton, 85 Mo. App. 477, 483; Cover et vir. v. Building & Loan Ass'n, 93 Mo. App. 302, 306.]

II. Under any view of the evidence in this case plaintiff did not tender to defendant the amount actually due. The second loan, with which we alone are concerned, is for $650. The total amount paid thereon by plaintiff, stock dues, interest, premium and fines, during the three years between its date and plaintiff's tender of the one hundred and forty dollars as the total amount then due, is $593.74. The simple interest on the amount of the loan for this period at eight per cent, the amount plaintiff says in his petition is correct, or at six per cent, as he now claims is all that can be charged under court decisions as to usury (Arbuthnot v. Loan & Bldg. Ass'n, 98 Mo. App. 382, 72 S. W. 132, and McDonnell v. Sav. & Bldg. Ass'n, 175 Mo. 250, 75 S. W. 438), would in any event make a considerably larger amount due than was tendered. The plaintiff, however, does not claim, and could not well do so, that the fines for nonpayment of stock dues were not, for the most part at least, correctly assessed.

It is generally held that, in order to maintain injunction to restrain the enforcement of steps taken to collect money on the ground that the amount demanded is excessive or that part of same is illegal, the plaintiff must first tender what is justly due. [McDaniel v. Springfield Waterworks Co., 46 Mo. App. 273, 280; Porter v. Paving & Const. Co., 214 Mo. 1, 22, 112 S. W. 235; Johnson v. Duer, 115 Mo. l. c. 379, 21 S. W. 800.] In a case involving the same principle as here, Price v. Empire Loan Ass'n, 75 Mo. App. 551, 556, the court recognized this rule and quotes form High on Injunctions, section 1116, as follows:

"Proceedings at law for the enforcement of usurious contracts will, as a general rule, be enjoined only upon condition that the party aggrieved make actual payment or tender of the amount really due. But if defendant answers without availing himself of this objection, an injunction already granted will not be dissolved where complainant offers to pay the amount actually due." The court there held that the matter of keeping the tender good by paying same into court was waived by a failure to object thereto in the answer, as it was in this case had the tender been sufficient in the first instance. The pleadings and trial of this case show that plaintiff was standing on the amount of his tender as being all that was due and all that he was offering to pay, and that he forced the defendant to commence foreclosure proceedings under the deed of trust in order to collect anything over the amount tendered. His complaint now is that the court dismissed his bill instead of taking an accounting, determining what plaintiff justly owed the defendant even if more than the amount of his tender, and making the injunction permanent on plaintiff's paying the amount found to be justly due. Perhaps the court might have pursued this course by treating plaintiff's bill as one for an accounting primarily and the injunctive feature as in aid of such bill. [Hammerslough v. Building, Loan & Sav. Ass'n, 79 Mo. l. c. 86.] The cases cited by plaintiff as sustaining his right to such an accounting were brought and prosecuted for that purpose and were not suits for injunctions. [Holmes v. Loan Ass'n, 166 Mo. App. 719, 150 S. W. 1111; Arbuthnot v. Loan & Bldg. Ass'n, 98 Mo. App. 382, 72 S. W. 132; Barnes v. Mo. Guar. Sav. & Bldg. Ass'n, 83 Mo. App. 466.] In Moore v. Building & Loan Ass'n, 74 Mo. App. 468, the plaintiff tendered the full amount due. While plaintiff asks for an accounting in this case, he seems to have done so only to substan-

tiate his claim that he had tendered all that was justly due. He does not, except perhaps by inference, offer to pay whatever the court may find is due.

III. Nor does the plaintiff complain in his motion for new trial of the court's action in dismissing the bill instead of taking an accounting and determining the amount due and allowing plaintiff to pay same as a condition to making the injunction permanent. The ground for complaint in the motion for new trial is that the court erred in finding *any* amount due defendant and that the evidence showed that plaintiff had already paid *more* than was justly due, and that the deed of trust should have been canceled and the injunction made permanent on the facts as presented.

IV. We also doubt whether the plaintiff presented the facts to the trial court in such a way as to admit of its making an accurate accounting on any theory of the case. Plaintiff admits that this court may not be able to make such accounting on the evidence. adduced in the trial court. He asks that this court determine if plaintiff owes defendant anything (which we have done) and, if we find that he does (and we so find), that we remand the cause for a full and final accounting. This, we think, is not a proper method of trying a case. The plaintiff must present his whole case to the trial court in the first instance unless precluded from so doing by some adverse ruling in that court. He cannot present evidence sufficient to raise one question, suffer an adverse judgment and on appeal ask this court, while sustaining the correctness of the trial court's ruling on the question presented, to reverse and remand the cause for further trial.

V. Under the ruling in Holmes v. Loan Ass'n, 166 Mo. App. 719, 150 S. W. 1111, to the effect that under section 3389, Revised Statutes 1909, the premium allowed to be charged in addition to the lawful

rate of interest cannot be a certain per cent of the loan payable in monthly installments *during the whole time of the loan,* the premium in this case must be regarded as additional interest and, when added to the lawful rate of interest charged, makes the same usury. As we understand that case, it holds that, if the payments of permiums be limited to one hundred and twenty months as being the probable duration of the loan, or any definite number of payments, then same are lawful as premium; but that the number of such payments of premium cannot be left as indefinite as the time in which the shares of stock will mature. But, granting that such payments are unlawful as premium and must be regarded as interest, are they not lawful as interest?

Interest may be at a certain rate payable in monthly installments during the life of the loan, which runs until the maturity of the stock unless paid sooner, and we may grant that premium cannot be thus indefinitely limited but must have an exact limit. The statute, section 3389, supra, as it now reads, after providing for competitive bidding for a gross amount of premium to be deducted in a lump sum from the face of the loan, or to be paid in monthly installments on the basis of the loan running one hundred and twenty months, provides: "Said association may provide in its by-laws that the bid for loans at its stated meetings, instead of a premium, shall be a stated rate of annual interest upon the sum desired, payable in periodical installments; such bids shall be the interest to be paid during the whole period of the loan or advance." This provision of this statute was first enacted in 1895, Laws of 1895, page 105, section 7. It is evident that the rate of interest which may be fixed by competitive bidding may be larger than the lawful rate of eight per cent and not be usurious because section 3391, Revised Statutes 1909, provides: "No premium, fines

*or interest* or interest on such premium, that may be charged by or accrue to the said corporation according to the provisions of this article, shall be deemed usuries, and the same may be collected as debts of like amount are now by law collected: *Provided,* that this section shall be no protection against any unreasonable and extortionate charge, fine or interest made by such corporation in its spirit usurious, and oppressive acts, and they shall be open to investigation and correction by the courts of the State." Prior to the amendment of 1895, section 9, supra, this section 3391 did not protect any increase of *interest* above the lawful contract rate of eight per cent from being usurious. Section 3389, supra, having provided for a premium in addition to the lawful rate of interest or for a rate of interest in excess of such lawful rate to be fixed by competitive bidding, then adds this proviso: "*Provided,* that any such association may, by its by-laws, dispense with the offering of its money for bids, and in lieu thereof loan or advance its money to members *at such a rate of interest* or interests and premium as may be provided by the by-laws, such premium to be paid in gross installments." It should be noticed that this proviso speaks of fixing rates of interest and rates of premium in the same manner. It is evident, we think, that, as a higher rate of interest than the lawful rate can be fixed by competitive bidding just as a premium can be added thereto in the same manner, so, under this provision dispensing with such bidding and permitting the by-laws to fix such rate of interest or premium, or both, a higher rate of interest than eight per cent can be so fixed and not be usurious because of the protection given by section 3391, supra. This seems to be conceded in the Holmes case, supra.

When the statute allowed only a premium to be fixed by competitive bidding in addition to the lawful

rate of interest there was much reason for holding that a premium not so fixed, which when added to the interest made more than the lawful rate, was usurious because the interest could not be increased above the lawful rate without being usurious. The premium when not fixed according to the statute was regarded as being in effect interest and as interest could not be increased above the lawful rate directly it could not be so done indirectly. The gist of all the cases, some of which are cited herein, is that what was called premium was because not fixed according to the statute really interest, and, being interest, it was unlawful under the old statute. But, under our amended statute, had the by-laws called both the eight per cent and the two per cent interest, instead of calling one interest and the other premium, the rate would be lawful. If, then, the two per cent called premium be regarded as interest, and that is all any of the cases hold, and we so treat it, we have a by-law fixing eight per cent plus two per cent, making ten per cent interest, payable in monthly installments during the life of the loan and such by-law is perfectly valid. The only objection is that, because the extra two per cent denominated premium, is payable during the life of the loan just as the eight per cent interest is so payable, such two per cent is interest in fact, though called premium, and makes a total of ten per cent interest. Grant that it is and we then simply have ten per cent interest on this loan fixed by a by-law and such is not usurious. It is not necessary, however, for us to decide this point in conflict with the decision of the Kansas City Court of Appeals in the Holmes case, supra, and thereby certify the case to the Supreme Court and we will leave the point as we find it.

It is proper to add, however, that the safeguard against oppressive or extortionate rates of interest, premium, or fines, is found in section 3391, supra,

making all such subject to supervision and correction by the courts. It is intended that building and loan associations shall charge and collect higher rates in loaning money than the legal rate of interest. This is so because they are mutual and all the members share in the profits. Experience has shown that when such associations are honestly and economically conducted the profits returned on the shares of stock reduce the rate of interest and premium to little, if any, more than the legal interest rate. The evidence shows such to be the fact in this case.

The result is that the cause will be affirmed.

*Farrington, J.,* concurs in all of the opinion except that covered in paragraph V, concerning which he expresses no opinion. *Robertson, P. J.,* dissents.